1 | Robert B. Carey (SBN 011186)
2 | John M. DeStefano (SBN 025440)
   | E. Tory Beardsley (SBN 031926)
3 | **HAGENS BERMAN SOBOL SHAPIRO LLP**
   | 11 West Jefferson Street, Suite 1000
4 | Phoenix, Arizona 85003
5 | Telephone: (602) 840-5900
   | Facsimile: (602) 840-3012
6 | Email:      rob@hbsslaw.com
7 |                  johnd@hbsslaw.com
   |                  toryb@hbsslaw.com
8 |
   | *Attorneys for Plaintiffs*
9 |
   | *[Additional counsel on signature page]*
10 |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Stacey Trent, on behalf of herself and all others similarly situated, | Case No. _____ |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Hartford Insurance Company of the Southeast, | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     PARTIES ..................................................................................................... 2

III.    JURISDICTION AND VENUE ................................................................... 2

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ............................. 3

V.      HARTFORD IMPROPERLY REFUSES TO DISCLOSE AND STACK
        PLAINTIFF'S COVERAGE ....................................................................... 5

VI.     CLASS ACTION ALLEGATIONS ........................................................... 10

FIRST CLAIM FOR RELIEF  (DECLARATORY JUDGMENT) ................................ 13

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) .................................... 14

THIRD CLAIM FOR RELIEF (BAD FAITH) ............................................................. 15

PRAYER FOR RELIEF ............................................................................................... 16

## I.    INTRODUCTION

1.    Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims, unless the insurer both (1) includes plain, express, and unambiguous language that prohibits stacking and (2) gives the insured notice of the right to select one policy or coverage either in the policy itself or in writing within 30 days of notice of the loss. A.R.S. § 20-259.01(H); *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Here, the insurer did none of these.

2.    "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages can exist, and those coverage limits can be added together to provide "stacked" benefits for a single claim. Each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.    When an insured is injured, insurance companies must find coverage for the insured, identify available coverages and limits, inform the insured accurately about available coverages and benefits, reasonably investigate the claim and applicable law, construe the policy in accordance with known law, treat its insured fairly and reasonably,

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

give the insured's interests equal consideration, and not conceal or misrepresent pertinent policy provisions, benefits or coverages.

4.     In handling UM/UIM claims for its customers with multiple covered vehicles, Defendant Hartford Insurance Company of the Southeast ("Hartford") has breached all of these duties as well as the policies themselves. As a matter of standard policy and practice, Hartford applied a single UM/UIM coverage limit to Plaintiff's claims even though Hartford's standard automobile policies ("the Hartford Policy" or "the Hartford Policies") failed to include plain, express, and unambiguous language that prohibited stacking. Hartford also on a systemic basis fails to inform its insureds of their right to select one policy or coverage in the policy itself or in writing within 30 days of receiving notice of the loss. Hartford, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policies but failed to do so. Having failed to satisfy the strict requirements of Arizona law and having failed to disclose the existence of stacked coverages to its insureds, Hartford breached its contractual and legal duties to its customers and failed to adjust their claims properly.

5.     Plaintiff Stacey Trent, an insured under a Hartford Policy, bring this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding her rights and the rights of the Class under their Hartford Policies and (b) state law based on diversity jurisdiction.

## II.     PARTIES

6.     Plaintiff Stacey Trent is a resident and citizen of Arizona.

7.     Defendant Hartford is an insurance company incorporated under the laws of Connecticut, with its principal place of business in Connecticut but which does business in the state of Arizona.

## III.     JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in

stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of Arizona, and Hartford is a citizen of Connecticut (where it is incorporated and has its principal place of business, respectively).

9.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Hartford Policies were issued in this District.

10.    Whenever it is alleged in this Complaint that Hartford did any act or thing, it is meant that Hartford and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Hartford or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Hartford and its officers, agents, servants, employees or representatives. Specifically, Hartford is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

11.    Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

12.    Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197 (*quoting Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000)).

13.    Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must include plain, express, and unambiguous language in the policy to that effect. *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Further, insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." *Id.*; A.R.S. § 20-259.01(H).

14.    "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

15.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

16.    Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under a single multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153.

17.    Under Subsection (H), the failure to include plain, express and unambiguous policy language that prohibits stacking prevents an insurer from limiting stacking. *Id.* Independently, the "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013).

18.    Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

19.    The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

## V.    HARTFORD IMPROPERLY REFUSES TO DISCLOSE AND STACK PLAINTIFF'S COVERAGE

20.    On August 17, 2022, Justin Holmes was operating a 2000 Lincoln Continental traveling eastbound on W Bell Road at N 67th Avenue.

21.    Plaintiff was operating a 2018 Hyundai Sonata, VIN 5NPE34AF0JH626711 ("the Sonata") traveling westbound on W Bell Road at N 67th Avenue. The time was approximately 3:00 p.m.

22.    According to reports from the Arizona Department of Public Safety, Mr. Holmes failed to yield the right of way and turned left directly in front of Plaintiff thereby causing a collision.

23.    Mr. Holmes was cited for violating A.R.S. § 28-772. He was negligent in causing the accident, and he was the sole cause of the accident.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

24.    As a result of the accident, Plaintiff sustained serious injuries and was taken by ambulance to Abrazo Arrowhead.

25.    Given the severity of the Plaintiff's injuries as a result of the accident, Mr. Holmes was underinsured as to Plaintiff. *See* A.R.S. § 20-259.01(G).

26.    The damages of those injured by Mr. Holmes exceed the amount of insurance available to Mr. Holmes.

27.    To protect her family members (as well as herself and others in her vehicles) from uninsured or underinsured tortfeasors, Plaintiff's husband, Mark Walton purchased UM/UIM insurance through Hartford. At the time of the loss, Plaintiff was an insured under that Hartford Policy. The Hartford Policy insured two vehicles: a 2019 Ford F150, VIN 1FTMF1CB8KKD90372 and the 2018 Hyundai Sonata, VIN 5NPE34AF0JH626711. Each vehicle's coverage provided Plaintiff with UIM benefits of $50,000 per person and $100,000 per occurrence.

28.    Plaintiff's damages attributable to Mr. Holmes's fault exceed the available amount of Mr. Holmes's bodily injury liability coverage, and the single (unstacked) UIM coverage on each of the two vehicles insured under the Hartford Policy.

29.    Plaintiff made a timely claim for UM/UIM benefits with Hartford.

30.    Hartford informed Plaintiff in a letter dated August 1, 2023, that it would not stack UM/UIM coverage.

31.    Hartford did not notify Plaintiff of her right to select one policy or coverage within 30 days after Hartford received notice of the accident.

32.    As used herein, "the Hartford Policy" or the "Hartford Policies" means any personal auto policy issued to an Arizona insured.

33.    In the Hartford Policy, Hartford agreed to pay as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**: 1. Sustained by an **insured**; and 2. Caused by an accident.
>
> …

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**: 1. Sustained by an **insured**; and 2. Caused by an accident.

34.    As to Plaintiff and the Class, the Hartford Policy does not contain plain, express, and unambiguous language that prohibits stacking multiple UM/UIM coverages under the policy itself.

35.    As to Plaintiff and the Class, the Hartford Policy also does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so only one policy or coverage, selected by the insured, shall be applicable to any one accident, and (b) it does not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident.

36.    The Hartford Policy states, "If this policy and any other auto insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply." This sentence contains no "plain, express, and unambiguous language" that prohibits stacking multiple UM/UIM coverages under the policy itself or under any one policy. It expressly refers to accidents involving multiple policies, but not multiple coverages under one policy.

37.    The Hartford Policy also states, "The Limit of Liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of . . . Vehicles or premiums shown in the declarations . . . ." This sentence contains no "plain, express, and unambiguous language" that prohibits stacking multiple UM/UIM coverages under the policy itself or under any one policy. Because stacking means applying the policy limit on a per-vehicle basis, a Limit of Liability clause does not prohibit stacked limits. *Franklin*, 532 P.3d at 1151-53.

38.    The declarations page of the Hartford policy also does not inform the insured of their right to select one policy or coverage.

39.    Hartford did not notify Plaintiff or any other class member that if the Hartford Policy did not plainly, expressly, and unambiguously prohibit stacking *and* give timely notice of the right to select one policy or coverage, Hartford would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages.

40.    The Hartford Policy under which Plaintiff was insured is Hartford's standard form Policy for personal (i.e., non-commercial) auto policies.

41.    As a general practice, whenever Hartford fails to include compliant policy language and fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Hartford does not provide stacked benefits unless specifically requested by the insured to do so.

42.    Hartford, having failed to comply with Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Hartford Policies.

43.    Hartford never disclosed or provided stacked UIM coverages to Plaintiff. Hartford, therefore, has denied Plaintiff benefits to which she is entitled under the Hartford Policy and Arizona law.

44.    As a general practice, Hartford does not disclose or provide stacked UM/UIM coverages class members under the Hartford Policies after a covered accident. On information and belief, Hartford has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to refuse to stack coverages for Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

45.    Hartford knew or should have known that its policy interpretation and its failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

46.    Hartford knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

47.    Hartford knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

48.    Hartford chose not to follow those practices.

49.    On information and belief, Hartford on limited occasions in Arizona has acknowledged, tendered or paid stacked UM or UIM limits when requested by the insured to do so.

50.    Hartford refused and/or failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

51.    Hartford failed, as to Plaintiff and the Class, to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Hartford Policies.

52.    Hartford and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Hartford Policies.

53.    On information and belief, Hartford received legal advice that its policy language violated Arizona law, but Hartford disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

54.    On information and belief, Hartford received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its refusals and/or failures to pay stacked UM/UIM coverages likely violated Arizona law. Hartford disregarded that legal advice.

55.    On information and belief, Hartford willfully concealed the existence of stacked UM/UIM coverages from Plaintiff and the Class.

56.    Hartford has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

57.     On information and belief, when paying UM or UIM benefits, Hartford has a practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment. Hartford does so despite knowing the insured is entitled to the payment without signing a release, and that it will issue payment of that benefit even if the insured declines to execute the release.

58.     Hartford's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

59.     Hartford's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

60.     Hartford's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to refusing to stack coverages for Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Hartford paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VI.    CLASS ACTION ALLEGATIONS

61.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

62.     The class consists of the following:

> All persons insured under one or more Hartford Policies issued in Arizona to the same purchaser, where either each policy or a single policy covers multiple vehicles, at the time of a covered loss, who, from the earliest allowable time to the date judgment enters, received UM/UIM benefits in an amount

equal to the limits of only one of the UM/UIM coverages under the applicable policy or policies.

63.    While the exact number of members cannot be determined, the class consists of at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Hartford.

64.    There are questions of fact and law common to the class, including the following:

    i.    Whether the Hartford Policy plainly, expressly, and unambiguously prohibits stacking;

    ii.    Whether the Hartford Policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Hartford to preclude stacking;

    iii.    Whether Hartford failed to send timely notice to its insureds after an accident of their right to select one UM/UIM policy or coverage;

    iv.    Whether Hartford concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Hartford Policies;

    v.    Whether Hartford failed to stack UM/UIM policies or coverages;

    vi.    Whether, through the foregoing practice, Hartford breached its contracts with its insureds;

    vii.    Whether, through the foregoing practice, Hartford breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

    viii.    Whether, through the foregoing practice, Hartford caused and will continue to cause harm to its insureds;

ix.    Whether Hartford is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law;

x.    Whether Plaintiff and the Class are entitled to declaratory relief;

xi.    Whether Hartford has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xii.    Whether Hartford's above-referenced conduct as to the Class warrants an award of compensatory damages;

xiii.    Whether Hartford's above-referenced conduct as to the Class warrants an award of punitive damages; and

xiv.    Whether Plaintiff and the class are entitled to an award of attorney's fees.

65.    Plaintiff has the same interests in this matter as all other members of the Class, and her claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members she seeks to represent. Plaintiff and all Class members have been harmed by Hartford's common course of conduct as outlined herein. The harm to each Class member was caused by Hartford's wrongful conduct.

66.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the Class members.

67.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

68.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Hartford's actions are generally applicable to the Class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.

69.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

70.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Hartford's conduct constitute bad faith under Arizona law—will materially advance the litigation.

71.    Absent a class action, most of the members of the Class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Hartford has concealed, failed to disclose or misled class members about their rights and those class members will remain ignorant of their potential claims against Hartford unless court-supervised notice is ordered.

72.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of other members of the Class.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

73.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

74.      Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Hartford Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Hartford's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

75.      Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Hartford Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Hartford Policies, that Hartford was required to disclose the existence of stacked coverages to them, and that Hartford was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Hartford Policies and its practices did not allow it to preclude stacking under Arizona law.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

76.      Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

77.      Each Class member (including Plaintiff) is a party to one or more of the standardized Hartford Policies.

78.      Hartford further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Hartford Policies under Arizona law, despite Hartford's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

79.      The Class (including Plaintiff) has been and continues to be damaged by Hartford's breaches of contract.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH)**

80.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

81.    Inherent and implied in the Hartford Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

82.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co*., 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co*., No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co*., 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

83.    The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

84.    Hartford acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose and pay benefits up to the stacked

UM/UIM limits of the Hartford Policies, despite Hartford's failure to comply with A.R.S. § 20-259.01(H).

85.    Hartford did so, even though it knew or should have known the Hartford Policies and Hartford's practices failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

86.    Hartford, therefore, acted in bad faith toward Plaintiff and the Class.

87.    Hartford's conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

88.    Hartford is, therefore, liable to the Class for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Hartford as follows:

A.    An order appointing Plaintiff as class representative and Robert Carey as class counsel and certifying the First and Second Claims for Relief under Rule 23(b)(2), and/or (b)(3), and the Third Claim for Relief as to liability and associated punitive damages under (c)(4).

B.    A declaratory judgment that Plaintiff and the Class are entitled to stacked UM/UIM coverages under the Hartford Policies, and a declaration establishing or an order mandating that the Class is entitled to disclosure of the existence of stacked coverages.

C.    Judgment in favor of Plaintiff and the Class on their Claims for Relief.

D.    Compensatory damages in an amount to be proven at trial, on the Second and Third Claims for Relief.

E.    Attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

F.    For costs incurred herein.

G.    Pre-judgment interest, post-judgment interest, and statutory interest under A.R.S. § 20-462.

H.    Punitive damages in an amount to be proven at trial, on the Third and Fourth

Claims for Relief.

I.    For any other relief permitted by Law.

Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all actions so triable.

Dated: October 10, 2023                    Respectfully submitted by,

                                            HAGENS BERMAN SOBOL SHAPIRO LLP

                                            By: *s/ Robert. B. Carey*
                                                Robert B. Carey
                                                John M. DeStefano
                                                E. Tory Beardsley
                                                11 West Jefferson Street, Suite 1000
                                                Phoenix, Arizona 85003
                                                Telephone: (602) 840-5900
                                                Facsimile: (602) 840-3012
                                                Email:    rob@hbsslaw.com
                                                          johnd@hbsslaw.com
                                                          toryb@hbsslaw.com

                                            GOLDSTEIN WOODS & ALAGHA

                                            By: *s/ Evan Goldstein*
                                                Evan Goldstein (SBN 011866)
                                                706 E Bell Rd., Ste. 200
                                                Phoenix, AZ 85022
                                                Telephone: (602) 569-8200
                                                Email:    egoldstein@gwalawfirm.com

                                            RUDOLPH & HAMMOND, LLC

                                            By: *s/ Kent Hammond*
                                                Kent Hammond (SBN 015100)
                                                8689 E San Alberto Drive
                                                Scottsdale, AZ 85258
                                                Telephone: (480) 951-9700
                                                Facsimile: (480) 951-1185
                                                kent@rudolphhammond.com

                                            *Attorneys for Plaintiffs*